**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

IN RE:

GREGORY E. PURDY &                                   CASE NO.: 06-30679-LMK
LAURA M. PURDY,

   Debtors.                                              CHAPTER: 13
_____/

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO CONFIRMATION

THIS MATTER is before the Court on Confirmation of the Debtors' Third Amended Chapter 13 Plan (the "Plan") (Doc. 44). The Trustee has objected to confirmation of the Plan (Doc. 45) on the ground that the Debtors understated their income and failed to commit their entire projected disposable income to be received in the applicable commitment period to their Plan as required by 11 U.S.C. § 1325(b)(1)(B). The Debtors answer that they have complied with the literal requirements of § 1325(b) regarding "projected disposable income," and the Plan should be confirmed. Therefore, I address the meaning of the term "projected disposable income" as used in § 1325(b)(1)(B). This is a core proceeding, and jurisdiction is proper pursuant to 28 U.S.C. §§ 151 and 157(b)(2)(L) (2006).

### *Findings of Fact*

Gregory E. and Laura M. Purdy filed a joint petition for relief under Chapter 13 of the Bankruptcy Code on October 20, 2006. Their Official Form 22C ("Form B22C") shows a joint current monthly income of $5,917.00 (Doc. 8). This amount reflects the Debtors' average income over the six months prior to filing the petition, two months of which Mr. Purdy was unemployed. However, it nevertheless classifies the Purdys as above-median debtors. On

1

Schedule I, the Debtors list their monthly income as $7,116.00. This amount reflects the Debtors' income as of the petition date, including an increase in Mr. Purdy's salary and reflecting the fact that Mrs. Purdy is no longer working.

In their Third Amended Chapter 13 Plan (Doc. 44), the Debtors propose to pay $1,584.00 to the Trustee every month for the applicable commitment period. The Trustee objects to the Debtors' calculation of their projected disposable income for purposes of the plan, arguing that the Debtors understated their income by calculating their projected disposable income based on the combined current monthly income (CMI) amount on Form B22C instead of the combined monthly income amount on Schedule I, which more accurately reflects their current financial means.

The parties' disagreement centers on the proper calculation of "projected disposable income" as used in § 1325(b)(1)(B). The Debtors argue that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) requires the calculation of projected disposable income based on a debtor's CMI. The Trustee contends that such method of calculation distorts a debtor's ability to pay into a Chapter 13 Plan, and she cites case law supporting the calculation of projected disposable income based on the debtor's projected income during the applicable commitment period. This is a case of first impression in this District.

### *Conclusions of Law*

Prior to BAPCPA, most bankruptcy courts interpreted § 1325(b) to define "projected disposable income" as "income not reasonably necessary for maintaining or supporting the debtor or a dependent, with that determination being made on an estimated basis at plan confirmation." In re Slusher, 359 B.R. 290, 294 (Bankr. D. Nev. 2007). Thus, "determining

what expenses were 'reasonably necessary' under this test required judges to make significant value judgments, leading to a wide diversity of rulings on whether particular expenses were justifiable." Id. Section 1325(b)(1) currently provides, in relevant part:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1) (2006) (emphasis added).

Since the enactment of BAPCPA, bankruptcy courts around the country have struggled to define what effect, if any, the amendments' substantial modification of the Bankruptcy Code (the "Code") should have on the phrase "projected disposable income." The Code has never explicitly stated what Congress meant by that specific sequence of terms, but interpretive guidance for the present analysis can be gleaned from examination of the two elements comprising the phrase: "projected" and "disposable income."

*A. "Disposable Income"*

Section 1325(b)(2) now defines "disposable income" as "*current monthly income* received by the debtor . . . less *amounts reasonably necessary to be expended* [for certain things]." 11 U.S.C. § 1325(b)(2) (2005) (emphasis added). This definition has two substantive parts: income and expenses.

"Current monthly income" ("CMI") is defined in § 101(10A) as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period [before the date of filing] and includes any

3

amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor and the debtor's dependents . . . but excludes [certain benefits and payments]." 11 U.S.C. § 101(10A) (2006). This definition also consists of two substantive parts: sources of income to be used in the calculation and the time period over which it is derived. A chapter 13 debtor's CMI is calculated on Form B22C by averaging the amount of income from those specified sources that the debtor received over the six months preceding the bankruptcy filing. Fed. R. Bankr. P. 1007(b)(6). Thus, CMI "is not necessarily current, but is a snapshot of the debtor's prepetition income." In re Kibbe, 361 B.R. 302, 308 (1st Cir. BAP (N.H.), 2007) (emphasis omitted). *See also* In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006) (concluding that "[b]y definition under §1325(b)(2), the term 'disposable income' is oriented in historical numbers."). Most significantly, Form B22C instructs the court as to which sources of revenue are appropriately considered "income" when determining a debtor's CMI.

The expenses, or amounts "reasonably necessary to be expended," for an above-median Chapter 13 debtor are determined in accordance with § 707(b)(2)(A) & (B). 11 U.S.C. § 1325(b)(3) (2005). The "means test," as that section is referred to, states that "the debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards . . . issued by the Internal Revenue Service for the area in which the debtor resides." 11 U.S.C. § 707(b)(2)(A)(ii) (2005). These fixed standards limit judges' discretion in deciding what expenses debtors can take.

### B. "Projected"

"Section 1325(b)(2) defines 'disposable income' but § 1325(b)(1)(B) requires that a debtor propose a plan paying '*projected* disposable income.' Meaning must be given to the word

4

'projected,' as it obviously has independent significance." Jass, 340 B.R. at 415 (emphasis in original). "Projected" means planned, figured, or estimated for the future.[1] Therefore, most courts consider it to be a forward-looking term, as opposed to the historically-oriented calculation used for "disposable income."[2] *See* Jass, 340 B.R. at 415; Kibbe, 361 B.R. at 308; Slusher, 359 B.R. at 297.

However, even after reaching this conclusion, courts interpreting the definition's effect on "disposable income" differ in their analyses of how Congress meant for the two terms to be joined. Judge Vaughn correctly summarized the conflict in In re Kibbe:

> "The resolution of this apparent inconsistency within the term 'projected disposable income' has generated two competing interpretations by those bankruptcy courts who have confronted the problem - each claiming to adhere to congressional purpose. The first camp holds that the term 'projected' simply means that the 'currently monthly income' figure from B22C must be multiplied (projected out) by the number of months of the proposed plan. This interpretation construes 'projected' simply as a multiplier for the term 'disposable income.' The second camp holds that, because the debtor's disposable income must be used to fund the plan, the term 'projected' was intended to signal a reexamination of income potential over the life of the plan. The effective consequence of this latter construction is that the terms 'disposable income' and 'projected disposable income' have very separate meanings."

Kibbe, 361 B.R. at 308 (internal citations omitted). I am persuaded by the second line of cases.

### C. "Projected" Modifies the Temporal Aspect of "Disposable Income"

When confronted with an ambiguous provision subject to two distinct interpretations, the court should first look to the language of the statute to determine Congressional intent. *See* Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) (holding that "[t]he starting point in

---

[1] Merriam-Webster's Online Dictionary 2007, http://www.m-w.com/dictionary/projected.
[2] A few courts addressing this issue have disregarded Congress' use of "projected" in Section §1325(b) as either meaningless as a modification of the strict formula for "disposable income," mere "surplusage," or contrary to the entire statutory scheme of the Code. *See* In re Hanks, 362 B.R. 494 (Bkrtcy, D.Utah., 2006).

discerning congressional intent is the existing statutory text and not the predecessor statutes."). In § 1325(b)(2), Congress defined "disposable income" in terms of CMI. The thrust behind the use of CMI within that definition is qualitative, specifying which sources of revenue should be considered income. *See* Hardacre, 338 B.R. at 723 (stating that CMI, in the context of "projected disposable income," is relevant "inasmuch as it describes the sources of revenue that constitute income, as well as those that do not."). It is true that Form B22C requires income to be calculated by averaging revenue from those sources over the six months prior to filing. However, a historically-oriented calculation, which gives the court an idea of where the debtor is coming from, is not necessarily proper for determining payments under a Chapter 13 Plan, which continues forward over a three to five year period.

> "Attaching the word 'projected' to a historical calculation assumes, without justification, that a debtor's circumstances will not change after the date of case commencement or during the plan commitment period. Life informs otherwise. Insofar as the term 'disposable income' demands a look back and the term 'projected' requires a look forward, the language is irreconcilable. One must give way to the other, or the courts must fashion an interpretation that gives the greatest meaning to both."

Kibbe, 361 B.R. at 312.

Additionally, the language of § 1325(b)(1)(B) references "all of the debtor's projected disposable income *to be received* in the applicable commitment period." 11 U.S.C. § 1325(b)(1)(B) (2005) (emphasis added). As past income is not "to be received," the language places emphasis on what the debtor receives in the future. It also directly contradicts the use of any calculation that would allow inclusion of income that a debtor is no longer receiving. Therefore, I conclude that the word "projected" within "projected disposable income" must modify the temporal aspect of "disposable income," appropriately shifting the calculation into the future when constructing a Chapter 13 Plan and giving a more accurate idea of what the debtor is capable of paying.

> "By placing the word 'projected' next to 'disposable income' in § 1325(b)(1)(B), Congress modified the import of 'disposable income.' The significance of the word 'projected' is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B). To require all debtors to propose plans paying the number resulting from Form B22C would essentially ignore the word 'projected' and give meaning only to the term 'disposable income.' The only way for the word 'projected' to have independent significance is if the word *modifies* the term 'disposable income.' "

Jass, 340 B.R. at 415-416 (emphasis added).

Courts have also looked beyond a statute's text when interpreting an ambiguous provision. Where a Court finds that evidence other than statutory language is necessary to the analysis, "it must consider other methods for construing the terms of a statute, such as a clear manifestation of Congressional intent, the policy underlying the statute and the likely impact of a contrary result, and a preference against surplusage." Id. at 416 (internal notations omitted).

My conclusion is consistent with Congress' intent in enacting BAPCPA. The Congressional intent behind BAPCPA was to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and to ensure that the system is fair for both debtors and creditors.³ "Among the abuses identified by Congress was the easy access to chapter 7 liquidation proceedings by consumer debtors who, if required to file under chapter 13, could afford to pay some dividend to their unsecured creditors. In order to curb this perceived abuse, Congress substantially modified [the Code]." In re Hardacre, 338 B.R. 718, 720 (Bankr. N.D. Tex. 2006) (internal citation omitted). *See also* In re Pak, 357 B.R. 549, 552-553 (Bankr. N.D. Cal. 2006) (explaining that "one of the primary purposes of BAPCPA's consumer amendments [is] to force 'can-pay' debtors to pay their creditors what they can, through a chapter 13 plan."). When President Bush signed BAPCPA into law on April 20, 2005, he stated:

---

³ H.R. REP. NO. 109-31, pt. 1, at 89 (2005).

7

> "In recent years, too many people have abused the bankruptcy laws. They've walked away from debts even when they had the ability to repay them . . . The bill I sign today helps address this problem. Under the new law, Americans who have the ability to pay will be required to pay back at least a portion of their debts . . . This practical reform will help ensure that debtors make a good-faith effort to repay as much as they can afford . . . America is a nation of personal responsibility where people are expected to meet their obligations. We're also a nation of fairness and compassion where those who need it most are afforded a fresh start. The act of Congress I sign today will protect those who legitimately need help, stop those who try to commit fraud, and bring greater stability and fairness to our financial system."

President's Remarks on Signing the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 41 WEEKLY COMP. PRES. DOC. pd25ap05_txt-14 (April 20, 2005). [4] As the legislative history indicates, Congress intended "projected disposable income" to reflect the maximum amount a debtor can afford to pay its creditors.[5] This intent is manifested by a calculation based on the income a debtor actually expects to receive.

This interpretation also gives meaning to all relevant Code provisions. *See* Jass, 341 B.R. at 418 (stating that "[a] Court interpreting a statute should avoid surplusage constructions if possible."). "[W]ere the Court to hold that § 1325(b)(1)(B)'s reference to 'projected disposable income' requires a debtor to always pay the number resulting from Form B22C, it would be *creating* surplusage - the term 'projected' would have no effect." Id. (emphasis in original). Moreover, if this Court were to conclude that "projected disposable income" should be calculated based on past income, chapter 13's modification provisions would be superfluous. Section 1329(a)(1) gives "the debtor, the trustee, or the holder of an allowed unsecured claim" the right to request that the court "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. 1329(a)(1) (2005). The chapter 13 trustee

---

[4] Available at http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=2005_presidential_documents&docid=pd25ap05_txt-14.
[5] H.R. REP. NO. 109-31, pt. 1, at 89 (2005).

8

also has a recently-added right to "a statement, under penalty of perjury, of the income and expenditures of the debtor during the tax year of the debtor most recently concluded . . . and of the monthly income of the debtor, that shows how income, expenditures, and monthly income are calculated[,]"[6] which must be submitted "90 days after the end of such tax year or one year after the date of commencement of the case, whichever is later, if a plan is not confirmed before such later date, and annually after the plan is confirmed and until the case is closed[.]" 11 U.S.C. § 521(f)(4) (2005). The inclusion of these rights would be pointless if the debtor's income with regard to plan payments is permanently fixed at the pre-petition amount. My interpretation avoids rendering those various portions of the Code mere surplusage, instead offering a definition that allows each one to stand on its own.

### D. *Competing Interpretations*

The opposing interpretation rejects the idea that "disposable income" and "projected disposable income" have separate meanings, instead arguing that the latter consists of the former "projected out," or multiplied by the applicable commitment period. As the Alexander court stated, this view concludes that, "in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math." In re Alexander, 344 B.R. 742, 749 (Bankr. E.D. N.C. 2006). However, "projected" does not mean the same thing as "multiplied;" in fact, Congress did not hesitate to use the term "multiplied" when that was what it meant. *See* 11 U.S.C. § 1325(b)(3) and (4) (instructing that certain figures be "multiplied by 12[.]").

---

[6] This statement "shall disclose (A) the amount and sources of the income of the debtor; (B) the identity of any person responsible with the debtor for the support of any dependent of the debtor; and (C) the identity of any person who contributed, and the amount contributed, to the household in which the debtor resides." 11 U.S.C. § 521(g)(1) (2006).

The <u>Alexander</u> court also reasoned that "[i]f 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose." <u>Id.</u> However, if Congress intended the phrases to mean the same thing, it would have used the same phrase in both provisions of § 1325(b). "The court is to presume that 'Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another[.]' While Congress could have used the phrase 'disposable income' in section 1325(b)(1)(B) and thereby invoked its definition as set forth in section 1325(b)(2), it chose not to do so. Consequently, Congress must have intended 'projected disposable income' to be different than 'disposable income.'" <u>Hardacre</u>, 338 B.R. at 723 (quoting <u>BFP v. Resolution Trust Corp.</u>, 511 U.S. 531, 537 (1993)).

Cases following <u>Alexander</u> state that they are simply applying the statute's plain meaning, which requires a strict interpretation of CMI. Even if this Court were to conclude that the plain meaning of the statute compels such an outcome (which it does not, as explained above), the "plain meaning" doctrine is not absolute. "The Court's inquiry should end with the language of a statute unless 1) a literal application of the statutory language would be at odds with the manifest intent of the legislature; 2) a literal application of the statutory language would produce an absurd result; or 3) the statutory language is ambiguous." <u>Jass</u>, 340 B.R. at 415 (internal notations omitted). *See also* <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1, 6 (2000) (holding that absurdity releases the court from its responsibility to follow the "plain meaning" of a statute.). As the ambiguity of this statutory language was addressed above, I now addresses contrary intent and absurdity.

The purportedly "literal" application of the statutory language advocated by the "multiplier" interpretation is at odds with the manifest intent of Congress. One court supporting that

interpretation stated that "[c]alculating 'disposable income' for above-median-income debtors under new section 1325(b) is now separated from a review of Schedules I and J[,]" and conducting such a review "would impermissibly undermine policy choices made by Congress." In re Barr, 341 B.R. 181, 186 (Bankr. M.D. N.C. 2006). However, the consequences of that view include forcing debtors who now have less income than they did during the six months prior to filing for bankruptcy to pay more than they can afford (essentially precluding them from completing a plan); "[c]ertainly the proponents of BAPCPA did not intend to close the bankruptcy court doors to debtors who voluntarily, and in good faith, seek to repay creditors with the funds they actually have on hand each month." In re Grady, 343 B.R. 747, 752 (Bankr. N.D. Ga. 2006). Moreover, "if the Court were to reach a *different* result and hold that a debtor must always pay unsecured creditors the number resulting from Form B22C, the Court would offend the 'fresh start' policies of the Code . . . [by] foreclos[ing] the potential for bankruptcy relief from a group of chapter 13 debtors who are otherwise eligible for relief." Jass, 340 B.R. at 417 (emphasis in original). I do not believe that Congress intended to override the fundamental Code policies of fairness to creditors and relief for the honest but unfortunate debtor when it enacted BAPCPA. Furthermore, I do not view my decision as an exercise of discretion; rather, I have simply interpreted § 1325(b) to determine how debtors' projected disposable income should be calculated.

Additionally, the "literal" application of the statutory language advocated by the "multiplier" interpretation produces an absurd result. A recent decision suggested that "absurdity cannot mean that BAPCPA was awkwardly written, does not reach some of the understood goals of BAPCPA, and/or creates unintended consequences[.]" In re Kolb, 2007 WL 960135, 3 (Bankr. S.D. Ohio March 30, 2007). However, it is absurd to construe a statute in a way that does not

11

make sense or is in opposition to the understood goals of its enactment. The <u>Kolb</u> opinion goes on to illustrate the inaccuracy of the calculation under the multiplier approach, but uses it anyway:

> "[A] debtor's actual income may be better or worse, often considerably so, than what is reflected in her CMI. For example, if the debtor lost a high paying job shortly before filing bankruptcy and is planning to fund the plan with a lower paying job, her CMI could be higher than her actual income. Conversely, if a debtor received a raise or found a higher paying job shortly before filing, a debtor's actual income could be higher than her CMI."

<u>Id.</u> at 6. In other words, one of two results will frequently occur: either those debtors whose incomes decrease shortly before or after filing for bankruptcy will not be able to fund a plan, or debtors whose incomes increase (as in this case) will pay less to their creditors than they can afford.

In re Arsenault, 2001 WL 1956277 (Bankr. M.D. Fla. 2007) presents an even more egregious example of the windfall some debtors would receive if the mechanical calculation endorsed by <u>Alexander</u> and <u>Kolb</u> were employed. In <u>Arsenault</u>, the debtors argued that their projected disposable income should be determined solely by the six months immediately preceding the filing of the petition, which would have excluded their annual bonuses, the most recent of which was received more than six months before their petition was filed.[7] Thus, determining projected disposable income based solely on a six-month average effectively permits debtors who strategically time the filing of their petition to shield income from unsecured creditors even when such income has been and will be received annually.

"If a debtor's prepetition averag[e] income was significantly higher than the debtor's income at plan confirmation, statutory indifference to the change at confirmation would doom any

---

[7] The bonuses were $17,000 in 2005 and $23,000 in 2006.

chapter 13 plan." <u>Kibbe</u>, 361 B.R. at 314. As stated above, Congress intended to restrict access to chapter 7 liquidation for debtors who could afford to repay their creditors in chapter 13. Closing chapter 13 to debtors who are trying to comply with that intent is an absurd result for legislation intended to accomplish that purpose. "Conversely, if . . . a debtor's prepetition averag[e] income was significantly lower than his or her income at plan confirmation, the debtor would be granted a windfall." <u>Id.</u> Again, this result is absurd in light of clear Congressional intent to force debtors to repay their creditors as much as they can. "As a result, unless a debtor's prepetition averaged income was substantially the same as it was at plan confirmation, either creditors would be cheated or, by dint of plan failure, neither the debtor nor the creditors would obtain the benefits that Congress intended for both under chapter 13 of the Bankruptcy Code. We find it unlikely that Congress intended either result." <u>Id.</u> I would extend that analysis to its logical conclusion: both results are absurd.

Because the competing interpretation produces an absurd result, at odds with the manifested intent of Congress, I am further convinced that my interpretation of "projected disposable income" is what Congress intended the phrase to mean. Again, Judge Vaughn's words echo the heart of the matter:

> "Said most directly, the object is not to select the right form, but to reach a reality-based determination of a debtor's capabilities to repay creditors. This object . . . best preserves both the congressional formulation of § 1325(b) and the unaltered twin mandates of the Bankruptcy Code: a fresh start for the honest debtor and a uniform and equitable distribution to creditors."

<u>Id.</u> at 315.

### *Conclusion*

"Projected disposable income," as used in 11 U.S.C. § 1325(b)(1)(B), is a forward-looking term that is calculated based on a Debtor's current projected income, not the historical average income for the six months prior to filing the petition. A Chapter 13 debtor's "projected disposable income," as calculated by Form B22C, will be presumed accurate unless the debtor or trustee can show that the numbers contained in Form B22C do not reflect a fair projection of the debtor's budget into the future because the debtor has experienced a substantial change in circumstances. In this case, that presumption has been rebutted. Because the Debtors can provide additional distribution to unsecured creditors above what is provided for in the Plan, the Plan does not provide for the Debtors' entire projected disposable income to be received in the applicable commitment period to be applied to make payments to their unsecured creditors, as required by § 1325(b)(1)(B), and cannot be confirmed.

Accordingly, it is hereby ORDERED and ADJUDGED that

1) The Trustee's Objection is GRANTED.

2) Confirmation of the Debtors' Third Amended Plan is DENIED.

DONE and ORDERED in Tallahassee, Florida this 6th day of August, 2007.

_/s/ Lewis M. Killian_
LEWIS M. KILLIAN, JR.
United States Bankruptcy Judge

cc: All parties in interest